IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| RICHARD M. METZLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 4:13-cv-278 |
| | § | |
| v. | § | |
| | § | |
| XPO LOGISTICS, INC. and | § | |
| BRADLEY S. JACOBS, | § | |
| | § | |
| Defendants. | § | |
| XPO LOGISTICS, INC., | § | |
| | § | |
| Counterclaim Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| RICHARD M. METZLER, | § | |
| | § | |
| Counterclaim Defendant. | § | |

**XPO LOGISTICS, INC.'S RULE 12(b) MOTION TO DISMISS RICHARD METZLER'S
AMENDED COMPLAINT, RULE 12(f) MOTION TO STRIKE JURY DEMAND
AND CERTAIN ALLEGATIONS, AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   STATEMENT OF ISSUES ......................................................................................... 3

III.  SUMMARY OF FACTUAL ALLEGATIONS ......................................................... 4

IV.   RULE 12(b)(1): LACK OF SUBJECT MATTER JURISDICTION ......................... 5

      A.   Legal Standard. ................................................................................................ 5

      B.   Metzler's Declaratory Judgment Claim Fails To Allege A Ripe And Justiciable
           Controversy. ..................................................................................................... 6

V.    RULE 12(b)(6): FAILURE TO STATE A CAUSE OF ACTION ........................... 9

      A.   Legal Standard. ................................................................................................ 9

      B.   Metzler Fails To Allege A Viable Claim For Intrusion On Seclusion. ................... 10

      C.   Metzler Does Not Allege The Required Elements For A Claim Of Tortious
           Interference With Contract. ................................................................................ 12

VI.   RULE 12(f): MOTION TO STRIKE ....................................................................... 14

      A.   Introduction and Legal Standard. ....................................................................... 14

      B.   Metzler Expressly and Knowingly Waived His Right to a Jury Trial in the
           Agreement. ....................................................................................................... 15

      C.   Allegations in Paragraphs 18, 21, and 22 Should Be Stricken. ............................ 18

VII.  CONCLUSION AND PRAYER ............................................................................... 20

## TABLE OF AUTHORITIES

Cases

*Aetna Life Ins. Co. v. Haworth*,
  300 U.S. 227 (1937).................................................................................... 7, 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................... 10, 11, 14

*Ball v. United Parcel Serv., Inc.*,
  No. H-10-1253, 2011 WL 1642148 (S.D. Tex. Apr. 29, 2011)............................ 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................. 10, 11

*Brown & Root, Inc. v. Big Rock Corp.*,
  383 F.2d 662 (5th Cir. 1967) ............................................................................ 8

*Dunn v. Calahan*,
  No. 03-05-00426, 2008 WL 5264886 (Tex. App. Dec. 17, 2008)......................... 13

*Elsensohn v. St. Tammany Parish Sheriff's Office*,
  530 F.3d 368 (5th Cir. 2008) ..................................................................... 10, 11

*Greenwich Mills Co., Inc. v. Barrie House Coffee Co., Inc.*,
  459 N.Y.S.2d 454 (N.Y. App. Div. 1983) ......................................................... 9

*Hoffman v. L & M Arts*,
  774 F. Supp. 2d 826 (N.D. Tex. 2011) ............................................................ 14

*Johnson v. Affiliated Computer Servs., Inc.*,
  No. 3:10-CV-2333, 2011 WL 4011429 (N.D. Tex. Sept. 9, 2011) ...................... 15

*JPA, Inc. v. USF Processors Trading Corp. Inc.*,
  No. 3:05-CV-0433P, 2006 WL 740401 (N.D. Tex. Mar. 15, 2006)...................... 17

*JPMorgan Chase Bank, N.A. v. Classic Home Fin., Inc.*,
  No. H-10-1358, 2012 WL 201533 (S.D. Tex. Jan. 23, 2012)................... 17, 18, 19

*Kappelmann v. Brown & Brown, Inc.*,
  07-22362-CIV, 2008 WL 638089 (S.D. Fla. Mar. 7, 2008) ............................... 17

*Klosek v. Am. Express Co.*,
  No. 08-426, 2008 WL 4057534 (D. Minn. Aug. 26, 2008)................................... 8

*Lyman v. St. Jude Med. S.C., Inc.*,
  423 F. Supp. 2d 902 (E.D. Wis. 2006)............................................................... 8

*McKenna v. PSS World Med., Inc.*,
  No. 09-0367, 2009 WL 2007116 (W.D. Pa. July 9, 2009) ................................... 8

*McLaren v. Microsoft Corp.*,
  No. 05-97-00824-CV, 1999 WL 339015 (Tex. App. May 28, 1999)...................... 13

*Mitchell Co., Inc. v. Campus*,
  672 F. Supp. 2d 1217 (S.D. Ala. 2009)............................................................ 12

*Mozdzierz Consulting, Inc. v. Mile Marker, Inc.*,
  No. 04-CV-74925-DT, 2006 WL 799222 (E.D. Mich. Mar. 28, 2006) ................. 9

*Norris v. Hearst Trust*,
  500 F.3d 454 (5th Cir. 2007) ......................................................................... 11

*Orix Credit Alliance, Inc. v. Wolfe*,
  212 F.3d 891 (5th Cir. 2000) ........................................................................... 6

*Patton v. United Parcel Serv., Inc.*,
  910 F. Supp. 1250 (S.D. Tex. 1995) ...................................................................... 11
*Pellerin Const., Inc. v. Witco Corp.*,
  No. Civ. A. 00-0465, 2001 WL 258056 (E.D. La. Mar. 14, 2001) .......................... 18
*Perloff v. Stein*,
  No. 10-1758, 2011 WL 666167 (E.D. Pa. Feb. 23, 2011) ...................................... 13
*Rodriguez v. Texas Comm'n of Arts*,
  992 F. Supp. 876 (N.D. Tex. 1998) ......................................................................... 7
*Schappert v. Bedford, Freeman & Worth Pub. Grp., LLC*,
  No. 03 CIV. 0058, 2004 WL 1661073 (S.D.N.Y. July 23, 2004) ............................ 17
*Smith v. Methodist Hospitals of Dallas*,
  No. 3:07-CV-1230-P, 2008 WL 5336342 (N.D. Tex. Dec. 19, 2008) .............. 12, 13
*Texas v. United States*,
  523 U.S. 296 (1998) ................................................................................................. 7
*TransFirst Holdings, Inc. v. Phillips*,
  No. 3:06-CV-2303, 2007 WL 867264 (N.D. Tex. Mar. 22, 2007) ........................... 17
*Walker v. Morgan Stanley Smith Barney LLC*,
  No. 10-02378, 2011 WL 1603490 (E.D. Pa. Apr. 27, 2011) ................................... 18
*Wesleyan Corp. v. U.S. Postal Serv.*,
  No. 05-10174, 2006 WL 1160833 (5th Cir. Apr. 24, 2006) .................................. 16
*Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*,
  56 F. Supp. 2d 694 (E.D. La. 1999) ....................................................................... 17

Constitutional Provisions

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 10, 11
Fed. R. Civ. P. 8(e)(1), (a)(2) ............................................................................................ 10
Fed. R. Civ. P. Rule 12(f) ................................................................................... 16, 19, 21

Pursuant to Rules 12(b)(1), 12(b)(6), and 12(f) of the Federal Rules of Civil Procedure, Defendant and Counterclaim Plaintiff XPO Logistics, Inc. ("XPO") hereby respectfully moves to dismiss the claims for declaratory judgment, intrusion on privacy, and tortious interference pleaded by Plaintiff and Counterclaim Defendant Richard M. Metzler ("Metzler") in his First Amended Petition filed on June 20, 2013 (the "Complaint"), as well as to strike Metzler's jury demand and certain improper allegations contained in the Complaint.  In support of this motion, XPO states as follows:

## I.
## INTRODUCTION

Metzler filed this lawsuit as a last ditch effort to forestall what he knew was inevitable. On May 2, 2013, XPO placed Metzler on paid leave while it investigated Metzler's conduct based on evidence indisputably demonstrating reasonable cause to suspect that Metzler took actions directly adverse to the competitive interests of XPO.  During that investigation, Metzler refused to cooperate at every turn, despite the clear obligations set forth in his Employment Agreement dated October 5, 2011 with XPO (the "Agreement"), which requires Metzler, among other things, to "cooperate in good faith with a governmental or internal investigation" and "to follow any lawful directive of the CEO."[1]

Instead, Metzler acted like someone who had something to hide (which, as it turns out, he did):  Metzler refused to allow his personal computer and electronic devices to be forensically imaged for the purposes of data preservation despite admitting that he had viewed and stored XPO information on those devices, Metzler refused to allow access to numerous other data sources that he conceded contain XPO information, and Metzler obstructed XPO's investigation

---

[1] A true and correct copy of the Agreement is attached hereto as Exhibit A.  Although Metzler did not attach a copy of this contract to the Complaint because of a confidentiality obligation applying only to Metzler, this Court may consider the Agreement as it is cited in the Complaint and relied on by Metzler in pleading his misplaced claims.

in numerous other respects.  Then – faced with XPO's legitimate request for Metzler to appear for a face-to-face interview with his employer by Friday, May 17, 2013 – Metzler launched this litigation on May 15, 2013 in Texas state court, obtaining an *ex parte* TRO that this Court dissolved in full two days later following removal.

XPO's investigation revealed a laundry list of improper, disloyal and competitive actions taken by Metzler, all while XPO handsomely compensated him as an officer of the company. XPO terminated Metzler's employment with XPO on May 31, 2013 and filed counterclaims against him on that same date.  Metzler's claims are nothing more than a concocted attempt to gain Metzler some measure of leverage against the clear misconduct revealed by XPO's investigation, and which justified Metzler's termination with cause.   Indeed, in Metzler's Complaint, he implicitly concedes the accuracy of XPO's investigatory findings by failing to take issue with the truthfulness of the items set forth in XPO's termination notice and counterclaims.

To the extent necessary, the evidence will demonstrate that all of Metzler's claims are baseless.  However, as a threshold matter, Metzler's claims for declaratory judgment, intrusion on privacy and tortious interference with contract each suffer from fatal flaws that require dismissal under Rule 12.  Metzler seeks to have this Court determine the enforceability of the non-compete provision contained in his Agreement, yet his claim seeks a wholly advisory opinion as there is no ripe or justiciable controversy alleged in the Complaint.  Metzler also fails to allege sufficient facts to state a claim for intrusion on privacy or tortious interference.  Instead, the Complaint contains only conclusory and threadbare legal assertions that are insufficient to meet federal pleading standards.  These counts must be dismissed.

Further, Metzler demands a jury trial in the Complaint despite the fact that he expressly and knowingly waived the right to a jury with respect to any claim or action arising out of or related to the Agreement or his XPO employment.   Metzler's contractual jury waiver is enforceable under controlling law, and the jury demand should be stricken.   Finally, Metzler's Complaint incorporates and relies on various portions of the Agreement, yet certain of the allegations contradict and misstate the clear and unambiguous terms of that contract.   Such allegations should be stricken under Rule 12(f).

## II.
## STATEMENT OF ISSUES

(1)     Whether Metzler's declaratory judgment claim should be dismissed because it fails to allege the existence of a ripe and justiciable controversy regarding the application of the restrictive covenants in the Agreement.

(2)     Whether Metzler's claim for intrusion on privacy claim should be dismissed because it fails to allege facts demonstrating that XPO intruded upon property as to which Metzler had a legitimate expectation of privacy.

(3)     Whether Metzler's claim for tortious interference with contract should be dismissed because it fails to allege the required elements of a breach of contract, XPO's knowledge of the confidentiality provisions allegedly breached, and proximate cause.

(4)     Whether Metzler's jury demand should be stricken in light of Metzler's knowing and voluntary contractual jury waiver in the Agreement.

(5)     Whether Paragraphs 18 and 22 of the Complaint should be stricken as expressly contradicted by the unambiguous provisions of the Agreement referenced and incorporated by the Complaint.

## III.
## SUMMARY OF FACTUAL ALLEGATIONS

Metzler is a sophisticated businessman with decades of experience in the logistics industry.  (Compl., ¶ 7.)  XPO hired Metzler to be its Senior Vice President of Acquisitions, a member of XPO's executive team.  (*Id.*)  Metzler signed the Agreement on October 5, 2011, agreeing that the contract would govern his duties and obligations to XPO.  (*Id.*, ¶ 18.)

As the purported grounds for his declaratory judgment claim, Metzler alleges that the non-solicitation and non-compete provisions in the Agreement are "an unreasonable restraint on Metzler's ability to earn a living."  (*Id.*, ¶ 41.)  Metzler further alleges that he is "unable to obtain employment anywhere in the logistics industry under the unreasonable terms" of those covenants.  (*Id.*, ¶ 44.)  Notably, however, Metzler does not allege that he has obtained or is being considered for any position to which the restrictive covenants of the Agreement would apply or even that he has attempted to obtain such a position and has been unable to do so.   In fact, Metzler does not allege that he has attempted to obtain a position of employment or that he has been impaired in any way in obtaining a position of employment.

With respect to his intrusion on privacy claim, Metzler alleges that XPO has taken possession of a personal laptop and iPad that Metzler left in his XPO office at the time his paid leave commenced on May 2, 2013.  (*Id.*, ¶ 28.)  Metzler asserts that XPO has accessed and copied his personal computer, including personal and third-party information located thereon, and has attempted to access his personal iPad.  (*Id.*, ¶¶ 28-29.)  Metzler alleges that by virtue of these actions, XPO has "intentionally intruded on Metzler's private affairs" and that this "intrusion is highly offensive" to Metzler.  (*Id.*, ¶ 66.)  However, Metzler does not allege any facts demonstrating that he maintained his personal laptop and iPad as private and does not assert that the laptop and iPad were free of XPO information and data.

With respect to his tortious interference claim, Metzler alleges that he holds board and advisory positions with two third-party companies, M33 Integrated Solutions ("M33") and Flash Global Logistics ("Flash").  (*Id.*, ¶ 9.)  Metzler also alleges that pursuant to his duties for these companies, he "receives and is required to review confidential information." (*Id.*, ¶ 12.)  Metzler alleges that XPO was aware of his roles with these companies and that XPO was aware of Metzler's "responsibilities relating to keeping information and communications relating to [M33 and Flash] confidential."  (*Id.*, ¶ 75.)  Based on XPO's alleged forensic imaging of Metzler's laptop and iPad, Metzler asserts that XPO has engaged in "tortious interference into the contractual relationships between Metzler and [M33 and Flash] … due to its unlawful interception of confidential communications and information." (*Id.*, ¶ 74.)  As a result of these alleged actions, Metzler asserts that XPO has "caus[ed] a breach of the confidentiality provisions" of Metzler's contracts with M33 and Flash.  (*Id.*, ¶ 76.)  However, Metzler does not allege any facts supporting his conclusory assertion that XPO had knowledge of any contractual confidentiality provisions he had with any party.  Further, Metzler does not allege that XPO intentionally induced any other party to breach Metzler's contracts with these third-party companies.

**IV.**
**RULE 12(b)(1): LACK OF SUBJECT MATTER JURISDICTION**

**A.     Legal Standard.**

An assertion that a declaratory judgment action is not justiciable is properly decided as a challenge to subject matter jurisdiction.  *See Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).  In deciding a facial challenge to subject matter jurisdiction, as here, the court assesses whether the plaintiff has correctly alleged a basis for subject matter jurisdiction by

reviewing the allegations in the complaint.  *See Rodriguez v. Texas Comm'n of Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998).  Here, Metzler has failed to allege facts demonstrating that his claim for declaratory judgment is ripe and justiciable, and essentially seeks from this Court an advisory opinion, completely bereft of any context or facts about any other purported opportunity, context and facts that would properly be considered, indeed, that are essential, to determine whether a restrictive covenant is properly applied.

**B.      Metzler's Declaratory Judgment Claim Fails To Allege A Ripe And Justiciable Controversy.**

Metzler's Complaint contains a declaratory judgment claim seeking a declaration that the non-solicitation and non-compete provisions contained in his Agreement "are unenforceable because they are an unreasonable restraint on Metzler's ability to earn a living."  (Compl., ¶ 41.) This claim, however, does not allege a ripe or justiciable controversy because Metzler nowhere alleges that he has obtained a competitive position that potentially infringes on these provisions of the Agreement, nor does he allege that he has been rejected for employment as a result of the non-compete provision.   Therefore, this claim does not present an actual controversy that is proper for consideration under the Declaratory Judgment Act.

The Supreme Court has noted that the case or controversy requirement under Article III of the United States Constitution is the same as under the Declaratory Judgment Act.  *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-240 (1937).  Thus, the issue raised is whether the Metzler's claim is ripe for adjudication.  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998).  Put another way, "[a] controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical,

conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1967).

Federal district courts routinely dismiss declaratory judgment actions regarding restrictive covenants in similar circumstances where the plaintiff has not alleged facts demonstrating that an actual controversy has arisen or that there are suffient facts alleged about a competitive position to allow assessment of the restrictive covenant.  For instance, in *Lyman v. St. Jude Med. S.C., Inc.*, 423 F. Supp. 2d 902, 906 (E.D. Wis. 2006), the court held that the plaintiff sales representative did not invoke the court's jurisdiction by requesting a declaration as to the validity of his restrictive covenant with the manufacturer defendant where the plaintiff made no allegation that he was competing with the defendant or that he had taken steps to compete with the defendant.  An identical result was reached in *McKenna v. PSS World Med., Inc.*, No. 09-0367, 2009 WL 2007116 (W.D. Pa. July 9, 2009).   There, the court the court dismissed a declaratory judgment claim suit seeking a determination of the validity of a restrictive covenant.  *See Id.* at *3-4.  The court held that the plaintiff's claim was "not ripe for judicial review" because the complaint did not include any allegations that the plaintiff had been offered or had accepted any employment, and, therefore, the plaintiff was seeking "a determination of his rights under the employment agreement based on a contingency—that plaintiff is offered employment in contravention of the employment agreement and that plaintiff accepts the offer." *Id.* at *2–3.  Thus, the court dismissed the complaint for lack of ripeness. *Id.* at *4; *see also Klosek v. Am. Express Co.*, No. 08-426, 2008 WL 4057534, *19-20 (D. Minn. Aug. 26, 2008)("Where an employee executes a noncompete, the existence of the noncompete by itself is not enough to establish a controversy. Nor is it enough for the employee to express a

desire to compete in the future."); *Mozdzierz Consulting, Inc. v. Mile Marker, Inc.*, No. 04-CV-74925-DT, 2006 WL 799222, *4 (E.D. Mich. Mar. 28, 2006)(granting a motion to dismiss a declaratory judgment claim that sought an order finding that a restrictive covenant had been extinguished where the plaintiffs failed to allege that they suffered an injury or that they had in fact pursued competitive opportunities).

Here, Metzler fails to allege a justiciable controversy because his declaratory judgment claim is purely hypothetical and rests only upon contingent future events.  Metzler seeks a declaration from this Court finding that the non-solicitation and non-compete provisions are unenforceable and an unreasonable restraint on trade.  Under New York law, a court interpreting a restrictive covenant is charged with "determining what restrictions are reasonable given the peculiar circumstances and context of each individual case."  *Greenwich Mills Co., Inc. v. Barrie House Coffee Co., Inc.*, 459 N.Y.S.2d 454, 456 (N.Y. Appl. Div. 1983) (internal citations omitted).[2]  "Courts must respond to each case as it presents itself" and the resolution of a dispute "depends entirely on the totality of circumstances."  *Id.*  Metzler's claim for declaratory judgment does not allege any facts providing the particular "circumstances" to provide a background against which this Court would construe the restrictive covenants in the Agreement. Essentially, Metzler seeks an advisory opinion that would require this Court to construe the Agreement in a vacuum and based upon a hypothetical set of future facts that have not yet occurred.  In stark contrast, XPO's counterclaim against Metzler for breach of the non-compete provision in the Agreement alleges specific facts regarding Metzler's actual past conduct in working on behalf of entities, such as M33 and Flash, in violation of his obligation not to compete with XPO.

---

[2] The Agreement provides that it is governed by New York law.  (Emp. Agmt., §10(k)(i).)

This difference between the two claims serves only to emphasize the deficiencies in Metzler's declaratory judgment count. As the Supreme Court has made clear, "[t]he controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests … [i]t must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Haworth*, 300 U.S. at 240-41. Metzler seeks only an opinion as to a hypothetical state of facts. Accordingly, his declaratory judgment claim is not ripe for adjudication and should be dismissed.

## V.
## RULE 12(b)(6): FAILURE TO STATE A CAUSE OF ACTION

### A.  Legal Standard.

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that each averment be "concise and direct." Fed. R. Civ. P. 8(e)(1), (a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *See Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 371-72 (5th Cir. 2008).

A court may dismiss a claim if a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In *Twombly*, the Supreme Court stated that to withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is

plausible on its face." *Twombly*, 550 U.S. at 570; *see also Elsensohn*, 530 F.3d at 372.  To be facially plausible, "[a] claim [must have] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).   To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and conclusions,'" and "a formulaic recitation of the elements of a cause of action will not do." *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007)"Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

### B.  Metzler Fails To Allege A Viable Claim For Intrusion On Seclusion.

To plead a claim for unreasonable intrusion on seclusion under Texas law, the plaintiff must establish: "(1) an intentional intrusion; (2) upon the seclusion, solitude, or private affairs of another; (3) which would be highly offensive to a reasonable person." *Patton v. United Parcel Serv., Inc.*, 910 F. Supp. 1250, 1276 (S.D. Tex. 1995).  Metzler's claim for intrusion on seclusion should be dismissed because the Complaint does not contain allegations demonstrating that XPO has intruded upon any domain or property that Metzler kept private.  The sole basis for this claim is the threadbare and conclusory allegation that XPO "intentionally intruded on Metzler's private affairs by obtaining unauthorized access to Metzler's personal laptop computer and iPad" and that the "intrusion is highly offensive." (Compl. ¶ 66.)   Metzler alleges no specific facts whatsoever in support of this legal assertion, and applicable case law dictates that Metzler has failed to plead a viable claim.   Therefore dismissal is appropriate on this basis.   *See Ball v.*

*United Parcel Serv., Inc.*, No. H-10-1253, 2011 WL 1642148, *2 (S.D. Tex. Apr. 29, 2011) (granting motion to dismiss where, as here, "Plaintiff merely quotes the language from Texas cases, stating that UPS invaded his privacy rights by "making an intentional and an unreasonable, unjustified and/or unwarranted intrusion, physically or otherwise, upon the solitude, seclusion, or private affairs of Mr. Ball, which would be highly offensive to a reasonable person.")

In addition, Texas law is unequivocally clear that "there is no intrusion where there is no legitimate expectation of privacy." *Smith v. Methodist Hospitals of Dallas*, No. 3:07-CV-1230, 2008 WL 5336342, *6 (N.D. Tex. Dec. 19, 2008). Here, the express allegations of the Complaint itself demonstrate that Metzler had no legitimate expectation of privacy in his laptop and iPad. Metzler concedes that he had left the personal laptop and iPad in his XPO office at the time his paid leave commenced on May 2, 2013. (Compl., ¶ 28.) Metzler also himself alleges that his laptop and iPad contained XPO business information. (*Id.*, ¶ 31.) Those allegations doom Metzler's invasion of privacy claim, as courts hold that the mixing of personal and business records destroys any claim of privacy that may have existed. *See Mitchell Co., Inc. v. Campus*, 672 F. Supp. 2d 1217, 1244 (S.D. Ala. 2009) ("In sum, Campus' intermingling of his personal and business records lifts any possible veil of privacy that may have applied."). For this tort to be alleged, the key issue is privacy, and the thing or place into which an intrusion is alleged must be private. Metzler has not alleged facts sufficient to make out this required element.

Metzler's claim fails for the additional reason that he has not alleged facts sufficient to show that the intrusion would have been highly offensive to a reasonable person. In evaluating

this element of an intrusion on seclusion on private affairs claim, "Texas courts require that (1) the intrusion must be substantial enough that an ordinary person would feel severely offended, humiliated, or outraged." *Smith,* 2008 WL 5336342 at *6.  Metzler has alleged no specific facts to establish this element and, therefore fails to state a claim.  *See McLaren v. Microsoft Corp.*, No. 05-97-00824-CV, 1999 WL 339015, *5 (Tex. App. May 28, 1999) (dismissing claim for intrusion on privacy where plaintiff was on suspension and personal emails were reviewed as part of an internal investigation because "a reasonable person would not consider Microsoft's interception of these communications to be a highly offensive invasion"); *see also Perloff v. Stein*, No. 10-1758, 2011 WL 666167, *3 (E.D. Pa. Feb. 23, 2011) (dismissing intrusion on privacy claim where plaintiff did "not set forth any facts showing that he experienced mental suffering, shame or humiliation as a result of the Defendants' intrusion into his e-mail and GoDaddy.com account").  Metzler's intrusion on seclusion claim should be dismissed.

### C.    Metzler Does Not Allege The Required Elements For A Claim Of Tortious Interference With Contract.

Metzler's tortious interference claim also should be dismissed because the Complaint fails to allege facts sufficient to establish numerous required elements of such a claim.  In order to plead a claim for tortious interference with contract under Texas law, a plaintiff must allege facts showing: "(1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was the proximate cause of plaintiff's damages; and (4) actual damage or loss." *Dunn v. Calahan*, No. 03-0500426, 2008 WL 5264886, *3 (Tex. App. Dec. 17, 2008).  Metzler claims that XPO tortiously interfered with contracts between Metzler and M33 and Flash by imaging his laptop and iPad that allegedly contained confidential information belonging to M33 and Flash.  (Compl., ¶¶ 74-75.)  Metzler asserts that in so doing, XPO has engaged in an "unlawful interception" of confidential information that Metzler was contractually

obliged to maintain as confidential.  (*See id.*)  Metzler, however, has failed entirely to plead sufficient facts to establish XPO's knowledge of and interference with the confidentiality provisions in contracts between those companies and Metzler, and has failed to allege any facts demonstrating that XPO proximately cause any breach or interference.

Indeed, Metzler's tortious interference claim is comprised only of conclusory recitals of the elements of such a claim and does not allege specific facts to support the allegation of XPO's intentional and willful interference with a contract of which it had express knowledge.  A recent federal district court decision applying Texas law is precisely on point.  In *Hoffman v. L & M Arts*, 774 F. Supp. 2d 826 (N.D. Tex. 2011), the plaintiff alleged that the defendant had tortiously interfered with a confidentiality provision contained in a contract, but alleged no facts demonstrating that the defendant had knowledge of the confidentiality provision supposedly at issue.  *Id.* at 846 (N.D. Tex. 2011).  The court dismissed the claim as improperly pleaded and held unequivocally that "[i]t is not enough to allege that a defendant had 'knowledge' of a contract or 'intentionally' interfered because this is nothing more than a recital of some of the required elements for a claim of tortious interference with contract … a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 677).  The court further explained that the "parties dispute whether [defendant] knew about the confidentiality provisions of the Letter Agreement, and [plaintiff] does not allege sufficient facts to establish that [defendant] in fact knew."  *Id.* at 847.  That conclusion also is warranted here.  Metzler alleges in conclusory fashion that XPO was "aware of Metzler's responsibilities relating to keeping information and communications relating to [M33 and Flash] confidential."  (Compl., ¶ 75.)  Metzler does not allege any facts

demonstrating that XPO had the requisite knowledge of the confidentiality provisions and took active and intentional steps to interfere with those provisions.  Dismissal is warranted on that basis alone.

Metzler's tortious interference claim is further flawed in that it fails to allege facts demonstrating the required element of proximate cause.  Under Texas law, in order to "establish proximate cause, Plaintiff must show that Defendants took an active part in persuading a party to a contract to breach it."  *Johnson v. Affiliated Computer Servs., Inc.*, No. 3:10-CV-2333, 2011 WL 4011429, *5 (N.D. Tex. Sept. 9, 2011).  In *Johnson*, the tortious interference claim was dismissed because there was "no allegation in the pleadings that Defendants actively persuaded the [third-party] to deny Plaintiff's request."  *Id.*  Likewise here, there is no allegation in the Complaint that XPO actively persuaded any party to breach the contracts between Metzler and M33 and Flash.  Instead, Metzler merely alleges that XPO imaged his laptop and iPad in the course of the internal investigation into Metzler's employment conduct.  Metzler admits that the laptop and iPad contained XPO information and that he kept these devices in his XPO office. (Compl., ¶¶ 28, 31.)  Put simply, there are no facts alleged that demonstrate XPO's active inducement of any party to breach the alleged contracts.  The tortious interference claim fails to state a viable cause of action.

## VI.
## <u>RULE 12(f): MOTION TO STRIKE</u>

### A.      Introduction and Legal Standard.

Metzler's jury demand and several allegations contained in his Complaint should be stricken.  Fed. R. Civ. P. 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  A court also has the authority under Rules 12(f) and 39(a)(2) to strike jury demands, on its own motion

or a motion of one of the parties.  *See, e.g., Wesleyan Corp. v. U.S. Postal Serv.*, No. 05-10174, 2006 WL 1160833 *1 n.2 (5th Cir. Apr. 24, 2006).  Metzler waived his right to a jury trial in the Agreement, and his jury demand should be stricken.  Additionally, several of the allegations contained in Metzler's Complaint are directly contradicted by the clear and express terms of the Agreement.  Thus, they are immaterial and insufficient, and likewise should be stricken to avoid prejudice to XPO.

> **B.      Metzler Expressly and Knowingly Waived His Right to a Jury Trial in the Agreement.**

Despite the fact that Metzler includes in his Complaint a claim against XPO for alleged breach of the Agreement, Metzler simultaneously ignores the express jury waiver contained therein and asserts a jury demand.  Metzler cannot "cherry pick" certain portions of the Agreement he thinks should apply while disavowing others.  Metzler waived his right to a jury trial in the Agreement, and his jury demand should be stricken.  Metzler knowingly and voluntarily signed a contract that contains the following provision (set forth below in the same capitalized font contained in the Agreement itself):

> EMPLOYEE EXPRESSLY AND KNOWINGLY WAIVES ANY RIGHT TO A JURY TRIAL IN THE EVENT THAT ANY ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE BREACH THEREOF, OR EMPLOYEE'S EMPLOYMENT, OR THE TERMINATION THEREOF, IS LITIGATED OR HEARD IN ANY COURT.

(Emp. Agmt., §10(k)(iv).)  The well-established law of the Fifth Circuit and other federal courts enforces such a jury waiver and courts routinely find that a jury demand should be stricken when a party has contractually waived its right to a jury trial.  *See JPA, Inc. v. USF Processors Trading Corp. Inc.*, No. 3:05-CV-0433, 2006 WL 740401, *12 (N.D. Tex. Mar. 15, 2006).  As courts

within the Fifth Circuit have noted, the Supreme Court "has long recognized that a private litigant may waive its right to a jury in civil cases," and agreements waiving the right to trial by jury are "neither illegal nor contrary to public policy."  *See Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, 56 F. Supp. 2d 694, 706 (E.D. La. 1999).  In determining whether a waiver of the right to a jury trial is knowing and voluntary, a court considers: "(1) whether the contract was negotiable; (2) whether the provision was conspicuous; (3) whether a gross disparity in the parties' respective bargaining power existed; (4) whether the waiving party was represented by counsel; and (5) whether the waiving party possessed equal business sophistication."  *JPMorgan Chase Bank, N.A. v. Classic Home Fin., Inc.*, No. H-10-1358, 2012 WL 201533, *3 (S.D. Tex. Jan. 23, 2012).  All favor enforcement of the jury demand here.

A jury waiver contained in an employment agreement is enforceable against the employee.  *See TransFirst Holdings, Inc. v. Phillips*, No. 3:06-CV-2303, 2007 WL 867264, *3 (N.D. Tex. Mar. 22, 2007) (holding that jury waiver provision in employment agreements was enforceable against former vice presidents where they did not bring forward any evidence to counter the showing that the waiver was made knowingly and voluntarily); *see also Kappelmann v. Brown & Brown, Inc.*, No. 07-22362-CIV, 2008 WL 638089, *1 (S.D. Fla. March 7, 2008) (enforcing jury waiver against employee where there was no evidence that plaintiff "did not possess sufficient education or experience to enter into the Employment Agreement"); *Schappert v. Bedford, Freeman & Worth Pub. Grp., LLC*, No. 03 Civ 58, 2004 WL 1661073, *11 (S.D.N.Y. July 23, 2004) jury waiver in employment contract where plaintiff was able to negotiate the terms, the waiver provision was conspicuous, and plaintiff had the opportunity to have the contract reviewed by her attorneys).

A broad jury waiver provision encompasses all of a defendant's employment related claims, including claims for breach of contract, invasion of privacy, conversion, tortious interference with contract, fraudulent inducement, conspiracy, and statutory discrimination claims.  *See id.*  Metzler has alleged claims for breach of contract, invasion of privacy, conversion, tortious interference with contract, fraudulent inducement and conspiracy, all of which fall within the Agreement's jury waiver provision.  *See Walker v. Morgan Stanley Smith Barney LLC*, No. 10-02378, 2011 WL 1603490 *3 (E.D. Pa. Apr. 2, 2011) (finding that all claims related to plaintiff's employment were covered by a broad arbitration provision). Thus, all of Metzler's claims are subject to the jury waiver provision of the Agreement.

Furthermore, all the applicable factors weigh in favor of enforcing the jury waiver provision of the Agreement and striking Metzler's jury demand. First, to the extent necessary, the evidence will make clear that Metzler actively negotiated the Agreement.  Second, like the contract provision in *JP Morgan Chase*, the jury waiver provision in the Agreement was written in all caps and was highly conspicuous.  *See* 2012 WL 201533 at *3 (holding that the jury waiver was conspicuous where the applicable language was written in capital letters and was set forth in a provision entitled "Governing Law").[3]  Additionally, Metzler does not allege that there was a disparity in bargaining power between Metzler and XPO.  Metzler concedes that he is a sophisticated businessman with more than thirty years of experience in the industry.  (Compl., ¶ 7.)  Thus this factor also favors enforceability.  *See JPMorgan Chase,* 2012 WL 201533 at *3 (holding that the plaintiff's possession of substantially more assets did not amount to "a gross

---

[3] Notably, many courts do not even require that the provision be capitalized or emphasized in any way in order to be conspicuous.  *See, e.g., Pellerin Const., Inc. v. Witco Corp.*, No. Civ. A. 00-0465, 2001 WL 258056, *2 (E.D. La. Mar. 14, 2001) (finding that a jury waiver within a voluminous contract and written in the same type as the other provisions was conspicuous).

disparity in bargaining power, particularly in light of Defendant's business sophistication"). Metzler also will not be able to deny that he had counsel review the Agreement on his behalf at the time it was entered.  Finally, there is no dispute that Metzler is a sophisticated businessman with several decades of experience in the logistics industry.  (Compl., ¶¶ 7, 9-10.) For all these reasons, Metzler's jury demand should be stricken.

### C.      Allegations in Paragraphs 18, 21, and 22 Should Be Stricken.

Metzler incorporates and relies on the Agreement in his Complaint, but makes several allegations contrary to the express terms of the Agreement.  These allegations are inaccurate and immaterial, and should be stricken pursuant to Rule 12(f).  *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.") Because these allegations mischaracterize the terms of the Agreement, XPO will suffer prejudice if they are not stricken.

First, in Paragraph 18 of the Complaint, Metzler alleges that the Agreement is "inappropriately" attached to XPO's Counterclaim.  This allegation is demonstrably incorrect. While the confidentiality provision of the Agreement prohibits Metzler from "disclos[ing] the terms of this Agreement," XPO is subject to no such restraint. (Emp. Agmt., § 7(a)(ii).) The implication that XPO violated the Agreement by attaching it to its Counterclaim is unfounded, is directly contradicted by the express terms of the Agreement, and is an unfair attempt to portray XPO negatively.  The final sentence of Paragraph 18 is incorrect, unnecessary and superfluous, and should be stricken.

In Paragraphs 21 and 22 of the Complaint, Metzler also grossly mischaracterizes the terms of the Agreement with respect to vesting of RSUs and payment of severance.   In Paragraph 21 of the Complaint, Metzler asserts that on termination without cause, "all of

Metzler's stock options will immediately become fully vested" and makes a similar allegation in Paragraph 22.  While, as a threshold matter, provisions of the Agreement relating to termination without Cause are inapplicable, Metzler's allegations are directly contrary to the express provisions of Section 3(c) of the Agreement, which provides a pro rata vesting mechanism to be applied in the circumstance of a termination without Cause.  Metzler does not and cannot allege any applicable circumstance under the Agreement in which he would be entitled to "all of" his RSUs or "immediate full vesting of all of his stock options," as alleged in the Complaint, and his facially incorrect and immaterial allegations should be stricken.  Similarly, Metzler's contention that there could be a set of circumstances where the Agreement required severance pay "for the remaining term of his Agreement (3.5 years remain on the term)," as alleged in Paragraph 22, is contradicted by the Agreement's plain language.  While the facts will demonstrate that Metzler is entitled to no severance, having been properly terminated for Cause, the Agreement provides for a severance payment "equal to one year's Base Salary" in the event of a termination without Cause (*see* Ex. A, § 5(d)(ii)), wholly inconsistent with Metzler's allegation that he could somehow be entitled to 3 ½ years of severance under the terms of the Agreement.

Metzler relies on the terms of the Agreement to support his claims.  Metzler should not be permitted to maintain allegations that are directly contradicted by the terms of the Agreement, particularly those that unfairly mischaracterize the terms of the Agreement to XPO's disadvantage.  Such allegations are "insufficient" and "immaterial," and should be stricken pursuant to Rule 12(f).  Failure to do so would subject XPO to prejudice.

## VII.
## <u>CONCLUSION AND PRAYER</u>

WHEREFORE, for the reasons stated above, XPO Logistics, Inc. respectfully requests that the Court: (1) dismiss Metzler's declaratory judgment, intrusion on privacy, and tortious interference claims; (2) strike Metzler's jury demand and paragraphs 18, 21, and 22 of the Complaint as referenced; and (3) grant such other and further relief, at law or in equity, to which XPO Logistics, Inc. may be justly entitled.


Dated: July 10, 2013                          Respectfully submitted,

                                               /s/ *Charles B. Leuin*
                                               Victor D. Vital
                                               Texas State Bar No. 00794798
                                               GREENBERG TRAURIG, LLP
                                               2200 Ross Avenue, Suite 5200
                                               Dallas, Texas 75201
                                               Tel. 214.665.3600
                                               Fax. 214.665.3601

                                               Charles B. Leuin (Admitted *pro hac vice*)
                                               Illinois State Bar No. 6225447
                                               leuinc@gtlaw.com
                                               GREENBERG TRAURIG, LLP
                                               77 West Wacker Drive, Suite 3100
                                               Chicago, Illinois   60601
                                               Tel. 312.456.8400
                                               Fax. 312.456.8435

                                               **ATTORNEYS FOR DEFENDANT**
                                               **XPO LOGISTICS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing was served on July 10, 2013 by **electronic transmission** upon all counsel of record.

/s/ *Charles B. Leuin*_____
Charles B. Leuin